Derek A. Newman, NY Bar No. 5897079
NEWMAN DU WORS LLP
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 377-0870
Email: dn@newmanlaw.com

Counsel for Plaintiff
Flex Marketing Group, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLEX MARKETING GROUP, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOSHUA LAPIN, an individual,<br><br>　　　　Defendant. | Case No. 1:22-cv-6179-AT-GWG<br><br>**FLEX MARKETING GROUP, LLC'S OPPOSITION TO DEFENDANT JOSHUA LAPIN'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1), 12(b)(2), AND 12(b)(6), OR IN THE ALTERNATIVE, TO ABSTAIN AND DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    A.    This Court has subject-matter jurisdiction over Flex's declaratory-relief claims. .... 5

    B.    This Court has personal jurisdiction over Lapin because he repeatedly consented to personal jurisdiction in this Court. ...................................................... 6

    C.    Flex's Complaint states a claim for declaratory relief against Lapin. ........................ 6

    D.    This Court should not abstain because Flex is entitled to a declaration as to Lapin's threatened claims which he is brandishing over Flex in an attempt to force an extortionate settlement. ............................................................................... 7

        1.    A judgment would serve a useful purpose in clarifying or settling the legal issues involved because Flex is seeking a declaration as to its liability with respect to all of Lapin's alleged 2,143 emails. .............................. 9

        2.    A judgment would finalize the controversy between Lapin and Flex and offer relief from uncertainty relating to the vast majority of Lapin's claims. ............................................................................................................. 9

        3.    The proposed remedy is not being used merely for "procedural fencing" or a "race to res judicata," as Flex seeks relief relating to a large number of emails representing over a million dollars in theoretical liability that Lapin threatens to sue over. ....................................................... 10

        4.    The use of a declaratory judgment would not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court, as Lapin has not sued Flex in South Dakota and there are no parallel proceedings which raise all of the same issues as this action .......................................................................................................... 10

        5.    There is no better or more effective remedy to seeking declaratory relief with respect to all of Lapin's claims—the alternative is for Flex to simply stand by and endure a trickle of new lawsuits in far-flung jurisdictions. ............................................................................................................. 11

CONCLUSION ..................................................................................................................... 11

## INTRODUCTION

Joshua Lapin is a prolific pro se plaintiff who sues companies for alleged violations of commercial email laws, seeking to cash in on lucrative statutory-damage awards. He threatened to sue Flex for more than $2 million based on the alleged receipt of 2,143 commercial emails he claims Flex is responsible for that violate South Dakota's commercial-email statute. When Flex declined, Lapin began filing lawsuits against Flex in various jurisdictions around the country, each addressing only a few dozen of the 2,143 emails. He even threatened to file a lawsuit against Flex in this Court.

To obtain resolution of all Lapin's claims, Flex filed this action seeking declaratory relief. Lapin's Motion (Docket # 23) seeks dismissal on multiple grounds: (1) under Rule 12(b)(1) for lack of subject-matter jurisdiction, (2) under Rule 12(b)(2) for lack of personal jurisdiction, (3) under Rule 12(b)(6) for failure to state a claim for relief, and (4) under the doctrine allowing federal courts to abstain from exercising declaratory-relief jurisdiction under certain circumstances. None of these grounds apply here.

First, subject-matter jurisdiction in declaratory-judgment actions exists where there is jurisdiction consistent with the diversity and amount-in-controversy requirements under 28 U.S.C. § 1332. Here, Lapin and Flex are residents of different states and there are millions of dollars in controversy. This Court has subject-matter jurisdiction over Flex's claim.

Second, a litigant is subject to personal jurisdiction where it provided express or implied consent to the personal jurisdiction of the court. Here, Lapin repeatedly threatened to sue Flex in this Court, as alleged in Flex's Complaint and confirmed in Lapin's Motion. Additionally, after Flex filed this action, Lapin sought affirmative relief from this Court by requesting the issuance of eight third-party subpoenas. By doing so, Lapin waived any objection to jurisdiction in this Court.

Third, stating a claim for declaratory relief requires that the facts alleged, under the circumstances, show that there is a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Here, Lapin threatened to sue Flex for millions of dollars over thousands of allegedly unlawful

commercial emails. He has already filed a few lawsuits, but the vast majority of those emails are not yet the subject of any other action. Flex's Complaint seeks a judicial declaration with respect to the entire controversy between it and Lapin and has therefore stated a claim for relief.

Finally, district courts may abstain from exercising declaratory-judgment jurisdiction where there is parallel state-court litigation involving the same claims, subject to the factors set forth in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Here, because of Lapin's piece-meal approach to suing Flex in multiple jurisdictions over small portions of the emails he claims it is liable for, there are no lawsuits with the same scope as this one. Additionally, all the *Wilton* factors support the Court exercising jurisdiction here and the Court should decline to abstain from doing so.

The Court should deny Lapin's Motion and allow Flex to proceed with its action for declaratory relief so that this controversy can be resolved in its entirety.

## BACKGROUND

Flex is a New York-based New York limited liability company, whose members are all New York residents. (Compl. ¶ 10.) It is a digital-marketing company that helps clients advertise their products and services through marketing channels, including websites and email. (*Id.* ¶ 17.)

Lapin is a prolific pro se litigant who demands settlements from companies for alleged violations of commercial-email laws. (*Id.* ¶ 12.) Lapin claims to be a legal resident of South Dakota, but he admits that he is almost never in South Dakota. (*Id.* ¶ 11.) Rather, he is a self-described "digital nomad" who lives out of suitcases and moves from country to country every 30 days. (*Id.*)

If the companies he threatens don't pay, Lapin sues, seeking significant statutory damages. (*Id.*) Lapin's litigation tactics frequently involve filing many motions, apparently aimed at increasing the cost of defense. (*Id.* ¶ 13.) For example, in January 2022, Lapin filed a lawsuit in the U.S. District Court for the District of Idaho, *Lapin v. Jones et al.*, No. 22-cv-00011-DCN. In that case, Lapin sued various defendants over 340 commercial emails he allegedly received in violation of Idaho and South Dakota law, seeking $340,000 in statutory damages. (Compl. ¶ 14.)

Within the first 60 days of that case, Lapin had filed so many motions that the court sua sponte entered an order preventing the filing of further motions without leave of court. (*Id.* ¶ 15.)

Since July 2021, Lapin has also filed commercial-email lawsuits in many other jurisdictions across the country including state courts in Colorado[1], Florida[2], Kentucky[3], Maryland[4], Missouri[5], and South Dakota[6], and federal courts in Arizona[7], California[8], South Dakota[9], as well as in this Court.[10]

On April 22, 2022, Lapin sent a letter to New York-based Flex and its CEO, Michael Held, in which he accused Flex of being responsible for 2,143 unsolicited commercial emails that he claims he received. (Compl. ¶ 21, 22.) He alleged they violate various provisions of South Dakota's commercial-email statute, S.D. Codified Laws § 37-24-47. (*Id.*) Lapin threatened to sue Flex in New York for those emails and to seek a total of $2,143,000 in statutory damages. (*Id.* ¶ 23.) He demanded a settlement payment of over $1.7 million from Flex.

Since then, Lapin has filed multiple lawsuits against Flex in several far-flung jurisdictions:[11]

---

[1] *Lapin v. Am. Auto Shield LLC*, No. 2022CV99 (Jefferson Cnty. Dist. Ct., filed May 9, 2022).

[2] *Lapin v. SBG Media Enters. LLC*, No. 2021ca009329 (Palm Beach Cnty. Cir. Ct., filed July 30, 2021); *Lapin v. Apptness Media Grp. LLC*, No. 2021ca009331 (Palm Beach Cnty. Cir. Ct., filed July 30, 2021).

[3] *Lapin v. Wellness Brands LLC*, No. 21ci00372 (Madison Cnty. Cir. Ct., filed Aug. 20, 2021).

[4] *Lapin v. Gov't Emps. Ins. Co.*, No. C-15-CV-22-001703 (Montgomery Cnty. Cir. Ct., filed Apr. 26, 2022).

[5] *Lapin v. NRRM LLC*, No. 2111-CC00681 (St. Charles Cnty. Cir. Ct., filed Aug. 9, 2021).

[6] *Lapin v. Apollo Interactive Ins. Sols. LLC*, No. 49CIV21-2069 (Minnehaha Cnty. Cir. Ct., filed Aug. 6, 2021); *Lapin v. Zeetogroup LLC*, No. 49CIV22-725 (Minnehaha Cnty. Cir. Ct., filed Apr. 5, 2022).

[7] *Lapin v. NortonLifeLock, Inc.*, No. 2:22-cv-00759-MTL (D. Ariz., filed May 4, 2022).

[8] *Lapin v. Aml Network Ltd.*, No. 5:22-cv-3158 (N.D. Cal., filed May 31, 2022).

[9] *Lapin v. Everquote, Inc.*, No. 4:22-cv-4058 (D.S.D., filed Apr. 26, 2022).

[10] *Lapin v. John Doe*, No. 1:22-cv-4144 (S.D.N.Y., filed May 20, 2022).

[11] Flex respectfully requests that the Court take judicial notice of Lapin's lawsuits filed against Flex. Under Federal Rule of Evidence 201, a district court may "take judicial notice of documents filed in other courts … not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (" 'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.' " (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

- On April 26, 2022, Lapin filed a lawsuit against Flex and other defendants in Maryland state court, *Lapin v. Gov't Emps. Ins. Co. et al.*, No. C-15-CV-22-001703 ("Maryland Case"), in which he alleges that Flex is liable for sending 49 unlawful commercial emails and seeks $49,000 in statutory damages. (Compl. ¶¶ 25, 26.)

- On May 4, 2022, Lapin filed a lawsuit against Flex and other defendants in Arizona federal court, *Lapin v. NortonLifeLock, Inc. et al.*, No. 2:22-cv-00759-MTL ("Arizona Case"), in which he alleges that Flex is liable for sending 68 unlawful commercial emails and seeks $68,000 in statutory damages. (Compl. ¶¶ 27, 28.)

- On May 9, 2022, Lapin filed a lawsuit against Flex and other defendants in Colorado state court, *Lapin v. American Auto Shield, LLC et al.*, No. 2022CV99 (subsequently removed to the United States District Court for the District of Colorado, No. 1:22-cv-01543) ("Colorado Case"), in which he alleges that Flex is liable for sending 34 unlawful commercial emails and seeks $34,000 in statutory damages. (Compl. ¶¶ 29, 30.)

Combined, the Maryland Case, Arizona Case, and Colorado Case involve 151 allegedly unlawful commercial emails for which Lapin claims Flex is liable and for which he seeks a total of $151,000 in statutory damages. (*Id.* ¶ 31.) Thus, despite filing three separate lawsuits against Flex within just a few weeks, Lapin has only sued for less than 10% of the 2,143 emails he threatened to sue over. (*Id.* ¶ 32) Flex anticipates many more lawsuits based on Lapin's threats and demands. At the current rate of about 50 emails per lawsuit, Lapin would need to file 40 more lawsuits against Flex to make good on his threat.

On June 14, 2022, Lapin threatened to file a "big suit" against Flex in this Court. (*Id.* ¶ 34.) On July 20, 2022, rather than wait for Lapin to sue it here while he continued to file other lawsuits against it around the country, Flex filed its Complaint for Declaratory Judgment against Lapin in this Court. (Docket # 1.) Flex's Complaint seeks a declaratory judgment that Flex did not violate commercial email laws by allegedly sending emails to Lapin. (Compl. ¶ 1.)

4

## ARGUMENT

**A.     This Court has subject-matter jurisdiction over Flex's declaratory-relief claims.**

Under Rule 12(b)(1), the "court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted); *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). In resolving a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

The Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts. *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *see also* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). The asserted basis for jurisdiction in this case is 28 U.S.C. § 1332, requiring that the parties be diverse and that the amount in controversy exceed $75,000.

In actions seeking declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The "amount in controversy is calculated from the [declaratory-judgment] plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (internal quotations omitted). Here, as alleged in the Complaint, Flex is seeking declaratory relief with respect to the more than $2 million in statutory damages Lapin threatens to sue it for, far in excess of the $75,000 threshold under 28 U.S.C. § 1332. Thus, this Court has subject-matter jurisdiction over this action.

**B.   This Court has personal jurisdiction over Lapin because he repeatedly consented to personal jurisdiction in this Court.**

Because personal jurisdiction is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, n. 14 (1985); *see also Andros Compania Maritima, S.A. v. Intertanker Ltd.*, 718 F. Supp. 1215, 1217 (S.D.N.Y. 1989) ("It is a fundamental tenet of jurisdictional law that a party may waive a challenge to the Court's in personam jurisdiction"). A party consents to the court's jurisdiction where it demonstrates a willingness to engage in extensive litigation in the forum. *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997) (*citing In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994)). In particular, "appearing and seeking affirmative relief from the court is the paradigm of a waiver to the court's in personam jurisdiction." *Grupke*, 174 F.R.D. at 18 (*citing Andros Compania Maritima*, 718 F. Supp. at 1217). Under these standards, Lapin has repeatedly consented to jurisdiction in this Court.

First, prior to Flex's filing of this action, Lapin repeatedly threatened to file a lawsuit against Flex in New York (*see* Compl. ¶¶ 8, 23; *see also* Mot. at pp. 6–8 (discussing Lapin's "prior, since abandoned, threat to sue Flex in SDNY")), thus at a minimum he provided implied consent to personal jurisdiction by demonstrating a willingness to engage in extensive litigation in the forum. *See Burger King*, 471 U.S. at 473, n. 14; *see also Grupke*, 174 F.R.D. at 18. Then, after Flex's Complaint was filed—apparently before Lapin's claimed change of heart about litigating in this forum—he requested issuance of eight third-party subpoenas from this Court (*see* Docket # 10–18), further demonstrating his consent to jurisdiction by "appearing and seeking affirmative relief" from the Court. *Grupke*, 174 F.R.D. at 18 (*citing Andros Compania Maritima*, 718 F. Supp. at 1217). Lapin is subject to personal jurisdiction.

**C.   Flex's Complaint states a claim for declaratory relief against Lapin.**

Under Rule 12(b)(6), the Court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they

plausibly give rise to an entitlement to relief." *Fabert v. Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

A claim for declaratory relief requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, there is no genuine dispute that there is an actual controversy between Lapin and Flex alleged in the Complaint, as Lapin has threatened to sue Flex for millions of dollars based on alleged receipt of commercial email. *See Carr v. DeVos*, 369 F. Supp. 3d 554, 565 (S.D.N.Y. 2019) (the absence of a right of action and a failure to plead adequately the threat of impending litigation require dismissal of declaratory-relief claim). Nor can Lapin reasonably dispute this, as his Motion discusses his ongoing intention to sue Flex for many hundreds of additional emails, representing millions of dollars in statutory damages. Flex has stated a claim for declaratory relief.

**D.    This Court should not abstain because Flex is entitled to a declaration as to Lapin's threatened claims which he is brandishing over Flex in an attempt to force an extortionate settlement.**

Abstention is "generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk*, 673 F.3d at 100 (*quoting Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "[i]n this analysis, the balance is heavily weighted in favor of the exercise of

7

jurisdiction." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks and brackets omitted).

Under *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), the Supreme Court set forth a test for abstention in declaratory-judgment cases, "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.' " *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (*quoting Wilton*, 515 U.S. at 282 (internal quotation marks omitted)); *see also Youell v. Exxon Corp.*, 74 F.3d 373, 375 (2d Cir. 1996). Arguably, *Wilton* abstention doesn't even apply here, as this case seeks resolution of all Lapin's threatened claims against Flex, not just the few dozen emails he's sued for in any of his existing actions. *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F3d 1271, 1284 (Fed. Cir. 2007) (the Declaratory Judgment Act is "intended to fix the problem that arises when the other side does not sue.")

In deciding whether to decline jurisdiction over declaratory-judgment claims, courts in the Second Circuit consider the following five factors:

(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;

(2) whether a judgment would finalize the controversy and offer relief from uncertainty;

(3) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata';

(4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and

(5) whether there is a better or more effective remedy.

*Niagara Mohawk*, 673 F.3d at 104 (internal quotation marks and citation omitted) (*citing Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003) (per curiam)). Here, all of the factors strongly indicate that the Court should exercise jurisdiction.

8

1. **A judgment would serve a useful purpose in clarifying or settling the legal issues involved because Flex is seeking a declaration as to its liability with respect to all of Lapin's alleged 2,143 emails.**

The first factor considers whether the declaration sought would resolve the entire controversy or only particular issues. *See Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 474 (S.D.N.Y. 2017) (exercising jurisdiction where requested declaration was not complete, but would "still resolve a central issue that uniformly applies" to the parties' dispute). Here, this is not an attempt to obtain declaratory judgment as to only particular issues—to the contrary, Flex wants complete resolution of all of Lapin's claims. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F2d 1542, 1555 (9th Cir. 1989) (declaratory-judgment actions relieve potential defendants from "Draconian threat of impending litigation which a harassing adversary might brandish").

2. **A judgment would finalize the controversy between Lapin and Flex and offer relief from uncertainty relating to the vast majority of Lapin's claims.**

This factor considers whether the requested declaratory judgment would finalize the controversy and offer relief from uncertainty. This is unquestionably the case here. Flex filed this lawsuit for the express and sole purpose of obtaining relief from Lapin's constant trickle of piecemeal lawsuits filed sporadically in far-flung jurisdictions. Lapin demands millions of dollars in statutory damages from Flex for its alleged role in sending commercial emails which Lapin claims to have received. Lapin's water-torture-like litigation strategy is clearly calculated to force Flex to incur substantial attorneys' fees in multiple jurisdictions while taunting it with the ongoing threat of yet more cases. *See City of Rome, N.Y. v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 174 n.3 (2d Cir. 2004) (stating that one purpose of the Declaratory Judgment Act "is to release potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure — or never").

3. **The proposed remedy is not being used merely for "procedural fencing" or a "race to res judicata," as Flex seeks relief relating to a large number of emails representing over a million dollars in theoretical liability that Lapin threatens to sue over.**

As discussed above, Lapin has threatened to sue Flex over 2,143 emails he allegedly received for which he demands over $2 million in statutory damages. But instead of filing a lawsuit against Flex, he has chosen to bring piecemeal lawsuits across the country asserting claims over a few dozen emails at a time. His strategy is apparent: to force Flex to incur substantial ongoing litigation expenses while being forced to wait for more and more additional lawsuits. Lapin previously threatened to sue Flex in this Court and Flex's declaratory-relief action is an appropriate vehicle to bring about final resolution of the entire controversy between the parties efficiently and swiftly.

4. **The use of a declaratory judgment would not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court, as Lapin has not sued Flex in South Dakota and there are no parallel proceedings which raise all of the same issues as this action.**

Lapin argues that the Court should abstain from exercising jurisdiction because this case involves state-law issues. This "argument is meritless," as the "very existence of diversity jurisdiction severely undermines any argument that federal courts should decline to hear declaratory judgment claims between diverse parties merely because state-law questions are in issue." *Precision Imaging*, 263 F. Supp. 3d at 475; *see also Colo. River*, 424 U.S. at 813–14 ("It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.")

The cases Lapin cites do not provide that federal courts should decline jurisdiction merely because state-law questions are at issue. Rather, they simply show that federal courts often decline jurisdiction where there is an ongoing parallel state proceeding regarding the same state-law issues that are raised in the federal action. *See, e.g.*, *Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996) (abstaining where "the claims of all parties in interest can satisfactorily be adjudicated in the state court proceedings currently pending"). Here, there is no parallel state-court proceeding in any meaningful sense, as Lapin's other cases against Flex each

involve only a small fraction of the emails at issue here. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.")

**5.    There is no better or more effective remedy to seeking declaratory relief with respect to all of Lapin's claims—the alternative is for Flex to simply stand by and endure a trickle of new lawsuits in far-flung jurisdictions.**

This factor considers whether the declaratory-judgment plaintiff potentially has a "'better or more effective remedy' in state court, … not whether it simply has an adequate alternative." *Precision Imaging*, 263 F. Supp. 3d at 476 (*quoting Dow Jones*, 346 F.3d at 360). In *Precision Imaging*, the defendant argued that the declaratory-judgment plaintiff could have brought an identical declaratory judgment action in state court. 263 F. Supp. 3d at 476. The court rejected that argument as a "non-starter," because it is not "an alternative remedy at all, but merely an alternative forum that can provide the same remedy." *Id.* Here, Flex unquestionably does not have a better or more effective remedy elsewhere. Lapin has strung out a series of lawsuits against Flex in federal and state courts across the country, none of which involve more than a tiny fraction of the emails he continues to threaten to sue Flex over. This factor also weighs in favor of exercising jurisdiction.

## CONCLUSION

Joshua Lapin is a highly sophisticated serial plaintiff who funds his constant international travel by threatening and filing lawsuits against businesses, including Flex, for technical violations of South Dakota's commercial-email law. He claims to have received 2,143 such emails for which he alleges Flex is responsible and for which he demanded more than $2 million in settlement. Lapin threatened to sue Flex in this Court, but instead has filed multiple lawsuits across the country, clearly in an effort to force Flex to settle rather than pay legal fees to defend Lapin's barrage of lawsuits. But those lawsuits collectively total only a small portion of the emails Lapin

has threatened to sue Flex over. He continues to hold the vast majority of them over Flex, continuing to threaten to sue it.

This controversy presents the quintessential circumstances for a declaratory-judgment action. Flex is entitled to resolution of Lapin's claims, in one forum, without being forced to defend them piecemeal across the country when Lapin decides to file more lawsuits. Now that Flex sought declaratory relief in this Court, Lapin claims to have changed his mind about wanting to sue Flex in this Court and is desperately attempting to return to his previous strategy of filing separate lawsuits against Flex in various jurisdictions. His Motion asserts a grab bag of arguments, none of which have merit. Flex respectfully requests that the Court deny Lapin's Motion in its entirety.

Dated: September 22, 2022

Respectfully submitted,

Newman Du Wors LLP

S/ Derek A. Newman
Derek A. Newman, NY Bar No. 5897079
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 377-0870
Email: dn@newmanlaw.com

Counsel for Plaintiff
Flex Marketing Group, LLC