```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FLEX MARKETING GROUP, LLC,            :

                Plaintiff,            :      REPORT & RECOMMENDATION
                                             22 Civ. 6179 (AT) (GWG)
       v.                             :

JOSHUA LAPIN,                         :

                Defendant.            :
-------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Flex Marketing Group, LLC ("Flex Marketing") brought this action seeking a declaratory judgment "that Flex did not violate commercial email laws by allegedly sending emails to" defendant Joshua Lapin. Complaint, filed July 20, 2022 (Docket # 1) at 1 ("Compl."). Lapin, who is proceeding pro se, now moves to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, or in the alternative to ask that the Court abstain from exercising jurisdiction.[1] For the following reasons, the Court should grant the motion to dismiss for lack of personal jurisdiction.

I.  BACKGROUND

Lapin is a "prolific pro se litigant." Compl. at 3. Lapin has claimed to have received some 2,143 emails from Flex Marketing in violation of South Dakota commercial email law. Id. at 1. Lapin demanded payment from Flex Marketing to settle this alleged claim, Compl. at 1, and after Flex Marketing rejected the demand, Lapin began suing over the 2,143 emails in piecemeal fashion, id. at 1-2. The complaint states that Lapin claims he is owed $1,000 for each email and has sued for $151,000 as of the time of filing, spread out over three separate lawsuits.

---

[1] See Motion to Dismiss, filed Sept. 7, 2022 (Docket # 23) ("Mot."); Opposition, filed Sept. 22, 2022 (Docket # 31) ("Opp."); Reply, filed Sept. 25, 2022 (Docket # 32) ("Reply").

Id. Lapin filed those three lawsuits in the U.S. District Court for the District of Arizona, Colorado state court, and Maryland state court. Id. Additionally, Lapin asserted that he would "file a 'big suit' against Flex" in the Southern District of New York. Id. at 6; Mot. at 7.

Flex Marketing filed the instant case as an action under the Declaratory Judgment Act, 28 U.S.C. § 2201. See Compl. Flex Marketing seeks a declaration that it "is not liable to Lapin for violating applicable law by sending, advertising in, or otherwise initiating any of the emails received by Lapin or any email account he controls, possesses, or established before the date of judgment." Id. at 11. It also requests attorneys' fees and costs. Id.

After Flex Marketing filed this suit, Lapin asked the Clerk to issue eight subpoenas and moved for leave to conduct expedited discovery. See Application for Leave, filed Aug. 24, 2022 (Docket # 16). This same motion, styled as an "Ex-Parte Application," said it was "NOT Defendant's 'answer or other first filing,' and he reserves all Defenses, including Lack of Personal Jurisdiction, which are not expressly waived." Id. at 1. The Court vacated the subpoenas and denied the motion for expedited discovery before Flex Marketing responded on the ground that no discovery should take place until the parties had conferred as required by Fed. R. Civ. P. 26(f). See Order, filed Aug. 26, 2022 (Docket # 20).

Lapin then filed the instant motion to dismiss. See Mot. After Lapin filed the motion, the Court granted Flex Marketing's motion to stay discovery. See Order, filed Sept. 13, 2022 (Docket # 30).

II.   SUBJECT MATTER JURISDICTION

Flex Marketing alleges the Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). See Compl. at 2. Diversity jurisdiction requires the

litigants to be citizens of different states and the amount in controversy to exceed $75,000. Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000).

The complaint alleges, and Lapin concedes, that Lapin is a citizen of South Dakota. Compl. at 2; Mot. at 1. Flex Marketing is a New York-based limited liability company with a principal place of business in New York City, and both of its members are residents of New York. Compl. at 3. For a limited liability company, "citizenship for diversity purposes is the citizenship of its members." Techno-TM, LLC v. Fireaway, Inc., 928 F. Supp. 2d 694, 696 (S.D.N.Y. 2013). Thus, because plaintiff is a citizen of New York and Lapin is a citizen of South Dakota, diversity of citizenship is satisfied.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). "[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Correspondent Servs. Corp. v. First Equities Corp. of Fla., 442 F.3d 767, 769 (2d Cir. 2006) (quotation omitted). That is, the amount in controversy can be understood as "the value of the consequences which may result from the litigation." Am. Standard, Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) (quoting Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir.1975)).

Here, the complaint alleges that Lapin has already filed three lawsuits that together claim $151,000 in damages. Compl. at 2. In total, Flex Marketing alleges that Lapin has threatened to sue for $2,143,000 in statutory damages absent acceptance of his settlement offer of over $1,700,000. Id. at 5. Although Lapin argues he has abandoned the full extent of this threat,

3

Lapin admits that he "reserves all rights" to carry it out in some fashion. Mot. at 8. That Lapin argues that the statute of limitations issues might prevent his success, Mot. at 7-8, is of no moment at this stage. "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 229 (2d Cir. 2017) (citations and internal quotations omitted).

Given that the declaratory relief sought would shield $151,000 in liability and forestall threatened lawsuits seeking $2,143,000, Flex Marketing has shown a "reasonable probability that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (citations and internal quotations omitted); see also Scottsdale Ins. Co. v. Access Sols. Grp. LLC, 2020 WL 9814090, at *3 (E.D.N.Y. Jan. 16, 2020) (finding amount in controversy satisfied where plaintiff insurance company sought a declaratory judgment about its $2 million liability coverage obligation to defendant and defendant faces a separate lawsuit for damages up to $1 million); Lighton Indus., Inc. v. Allied World Nat'l Assurance Co., 348 F. Supp. 3d 167, 181 (E.D.N.Y. 2018) (where a party requested a declaration that it is entitled to indemnity a third party for up to $2,000,000, it has satisfied the jurisdictional amount because there is a "reasonable probability" that the value of the declaration exceeds $75,000).

Because Flex Marketing has demonstrated diversity of citizenship and satisfied the jurisdictional amount, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). See Handelsman, 213 F.3d at 51.

III.   PERSONAL JURISDICTION

    A.   Standard of Review Under Rule 12(b)(2)

On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); accord DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (per curiam) (citation omitted); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). If a court does not conduct an evidentiary hearing on the issue of personal jurisdiction, as is the case here, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano, 286 F.3d at 84 (citing Bank Brussels Lambert, 171 F.3d at 784); accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations.") (citation and internal quotation marks omitted). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010)). Conclusory allegations do not satisfy a plaintiff's burden. See id. at 676; Megna v. Biocomp Labs. Inc., 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016). Rather, "the prima facie showing must be factually supported." Beeney v. InSightec, Inc., 2014 WL 3610941, at *2 (S.D.N.Y. July 7, 2014) (citation and internal quotation marks omitted).

A plaintiff can also demonstrate personal jurisdiction "through his own affidavits and supporting materials." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citation and internal quotation marks omitted). In deciding whether the plaintiff has met its

burden, a court must view the pleadings and affidavits in the light most favorable to the plaintiff, with all doubts resolved in its favor. See, e.g., Dorchester Fin. Sec., Inc., 722 F.3d at 85; DiStefano, 286 F.3d at 84.

As to the merits of the personal jurisdiction analysis, courts engage in a two-part inquiry. First, a court determines whether the long-arm statute of the state in which the court sits allows for personal jurisdiction. See, e.g., Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted); accord Megna, 166 F. Supp. 3d at 497 (citations omitted). Second, if the long arm-statute permits jurisdiction, a court determines "whether asserting jurisdiction under that [law] would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)).

B. Analysis

Flex Marketing makes no effort to show that the Court has personal jurisdiction over Lapin under New York State's long-arm statutes, N.Y. C.P.L.R. § 301-02, or that the effort to sue Lapin here would comport with due process. Instead, it argues that Lapin gave "express or implied consent" to personal jurisdiction. Opp. at 6. It also cites cases involving "waiver" of the personal jurisdiction defense. Id.

On the question of consent, "[a] court will obtain, through implied consent, personal jurisdiction over a defendant if '[t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 134 (2d Cir. 2011) (quoting Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704-05 (1982)). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation

6

that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 102 (2d Cir. 2016) (citation and quotation marks omitted). Thus, where a defendant engages in continual pretrial activity, "delay in challenging personal jurisdiction by motion to dismiss" may result in waiver, "even where . . . the defense was asserted in a timely answer." Datskow v. Teledyne, Inc., 899 F.2d 1298, 1303 (2d Cir.1990). To determine whether a waiver or forfeiture has taken place, the Second Circuit in Hamilton v. Atlas Turner, Inc., 197 F.3d 58 (2d Cir. 1999) looked to the "delay in bringing the motion, the extent of pretrial activity that has taken place, and the opportunities that existed to assert the motion." Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., 2001 WL 1041990, at *3 (S.D.N.Y. Sept. 7, 2001).

Here, Flex Marketing points to the following facts as justifying a finding of implied consent or waiver: (1) Lapin repeatedly threatened to file suit in New York (though he never did so) before Flex Marketing filed the instant action; (2) once Flex Marketing filed this action, Lapin requested eight non-party subpoenas from the Clerk. Opp. at 6.

As to the first point, Flex Marketing cites to no case that has found implied consent or waiver based on a threat to file suit in a particular jurisdiction. Instead, courts have analyzed litigation activity by a defendant that actually occurred in the suit in question. E.g., Hamilton, 197 F.3d at 59-61. Thus, any alleged threat by Lapin to file suit in a particular jurisdiction is irrelevant to the personal jurisdiction analysis.

As to litigation in the jurisdiction where the lawsuit at issue is pending, the Second Circuit in Hamilton held that where a defendant had participated "in extensive pretrial proceedings" in the lawsuit and forwent "numerous opportunities to move to dismiss," the

7

asserted personal jurisdiction defense in that lawsuit had been forfeited. 197 F.3d at 59, 61. In this case, the Clerk issued eight subpoenas at Lapin's behest, but the subpoenas were vacated within two days, and no evidence was ever obtained from them. Additionally, Lapin filed his motion to dismiss for lack of personal jurisdiction even before the deadline for the filing of his answer. Not surprisingly, none of the cases cited by Flex Marketing as to litigation activity resulting in waiver, Opp. at 6, even remotely resemble the minimal activity that occurred here. Thus, Grupke v. Linda Lori Sportswear, Inc., 174 F.R.D. 15 (E.D.N.Y. 1997), involved a suit that had been involuntarily transferred from Wisconsin to the Eastern District of New York. Id. at 16-17. The plaintiffs litigated the suit in the Eastern District and lost a summary judgment motion. Id. at 16. The defendants then asserted a compulsory counterclaim against the plaintiffs. Id. at 16, 18. Grupke held that because the plaintiffs had "continued to litigate in this court," they had "waived any objections to the court's exercise of personal jurisdiction to adjudicate claims ancillary to their own." Id. at 19. Here, of course, there has been no litigation of any claims, let alone litigation of a matter as weighty as a summary judgment motion.

Flex Marketing's citation to a footnote in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), for the proposition that there are a "variety of legal arrangements" by which a litigant may give implied consent to personal jurisdiction, id. at 472 n.14, is even further wide of the mark. The specific "arrangements" referred to in the footnote related to agreed-upon forum selection clauses. Id. The actual holding of the case has nothing to do with consent to personal jurisdiction.

Flex Marketing's reliance on Andros Compania Maritima, S.A. v. Intertanker Ltd., 718 F. Supp. 1215 (S.D.N.Y. 1989), is equally unhelpful. Andros involved a party that filed suit in the forum state to confirm an arbitration award. See id. The court held that filing suit in the forum

8

meant that the litigant waived any challenge to personal jurisdiction in a related consolidated suit instituted against that plaintiff.  Id. at 1217-18.  The court rejected the notion that the party challenging jurisdiction "should be allowed to step into New York courts as it pleases, free from the possibility of the assertion of any counterclaims, interventions or cross claims."  Id. at 1217.  Here, of course, Lapin has not filed any suit in New York.

In cases where forfeiture of a personal jurisdiction defense has been found, the forfeiture has occurred in the wake of a far greater quantum of litigation activity.  See, e.g., Roberts v. Bennaceur, 658 F. App'x 611, 617-18 (2d Cir. 2016) (defendant issued subpoenas, conducted depositions of witnesses, and entered into a Confidentiality Stipulation that made the defendant subject to the court's jurisdiction); Hamilton, 197 F.3d at 59-61 (defense raised after trial and a jury verdict); Salamone v. Douglas Marine Corp., 2022 WL 111774, at *5 (N.D.N.Y. Jan. 12, 2022) (defense raised after "extensive participation in" litigation, including trial); Allgaier v. Peterson, 2015 WL 5459808, at *3 (S.D.N.Y. Aug. 13, 2015) (defendant attended eleven conferences and a mediation session, "completed discovery on the merits of the case," and "passed up multiple chances to litigate personal jurisdiction").  None of these cases is on a par with a defendant who requests eight subpoenas that are immediately vacated.  Indeed, there are cases finding no forfeiture where the defendant's litigation activity was far greater than what Lapin exhibited here.  See, e.g., Prospect Funding Holdings, LLC v. Vinson, 256 F. Supp. 3d 318, 326-27 (S.D.N.Y. 2017) (no forfeiture where party delayed 13 months and participated in a status conference and a deposition); Phat Fashions, L.L.C., 2001 WL 1041990, at *3 (no forfeiture where the defendant "waited thirteen months to bring its motion [to dismiss] after the complaint was filed, and ten months after filing its answer, and engaged in significant pretrial

activity during that time, including the completion of discovery on Plaintiff's substantive claims.").

CONCLUSION

For the above reasons, the motion to dismiss (Docket # 23) should be granted on the ground that the court lacks personal jurisdiction over Lapin.[2]

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Torres. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 2, 2022
  New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[2] Because Flex Marketing has not demonstrated personal jurisdiction over Lapin, it is unnecessary to consider the remaining grounds of Lapin's motion.